UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMEN GRIGORYE SINANYAN,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ERNESTO SANTACRUZ JR., *et al.*,<br><br>　　　　　Respondents. | Case No. 5:26-cv-00395-CV (KES)<br><br>**ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [3]** |

　　　　On January 29, 2026, Petitioner Armen Grigorye Sinanyan ("Petitioner") filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("Application"). Doc. # 3 ("App."). On February 3, 2026, Respondents filed an Opposition, and on February 4, 2026, Petitioner filed a Reply. Doc. # 8 ("Opp."); Doc. # 9 ("Reply"). Having reviewed and considered all the briefing filed with respect to the Application, the Court finds that oral argument is not necessary to resolve the Application, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

I.　**INTRODUCTION**

　　　　On January 29. 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 (the "Petition") against the Acting Director of the Los Angeles

Field Office of Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, Ernesto Santacruz Jr.; the Acting Director of ICE, Todd Lyons; the Secretary of the U.S. Department of Homeland Security ("DHS"), Kristi Noem; DHS, the U.S. Attorney General, Pamela Bondi; and the Warden of Adelanto ICE Processing Center, Fereti Semaia (collectively, "Respondents"). Doc. # 1 ("Pet.").

On the same day, Petitioner filed the Application, seeking a Temporary Restraining Order ("TRO") that would (1) direct Respondents to immediately release Petitioner from custody under the conditions of his prior Order of Supervision; (2) enjoin Respondents from removing Petitioner from the United States pending the resolution of his habeas petition; and (3) enjoin Respondents from relocating Petitioner outside of the Central District of California pending final resolution of this case. App. at 2.

## II.    FACTUAL BACKGROUND

Petitioner was born in Armenia in 1982 when Armenia was part of the former Union of Soviet Socialist Republics (USSR). Pet ¶ 38. In 1991, when Petitioner was eight years old, he and his parents lawfully entered the United States. *Id.* ¶ 39. At the time of his entry into the United States, Petitioner possessed a passport issued by the former USSR. *Id.* Petitioner was granted lawful permanent resident status in 1991, and has resided in the United States for approximately 35 years. *Id.* ¶¶ 4, 40.

On June 16, 2012, DHS issued a Notice to Appear ("NTA") charging Petitioner as removable due to his criminal history. *Id.* ¶ 42.[1] On February 19, 2013, an order of removal was issued against Petitioner. *Id.* ¶¶ 6. 50. Following a custody review on May 19, 2013,

---

[1] Specifically, the NTA charged Petitioner as removable under INA § 237(a)(2)(A)(iii) (aggravated felony), §237(a)(2)(A)(ii) (multiple criminal convictions involving moral turpitude), and §237(a)(2)(B)(i) (controlled substance violation), codified at 8 U.S.C. §§ 1227(a)(2)(A)(iii), (ii), (B)(i). Pet. ¶ 42. The NTA pointed to Petitioner's June 8, 2012 conviction in California Superior Court, County of Los Angeles for possession of controlled substance for sale, California Health and Safety Code § 11351, for which he was sentenced to 180 days in Los Angeles County Jail, as well as his February 6, 2004 conviction in California Superior Court, County of Los Angeles, California Penal Code §475(a) (forgery), for which he was sentenced to 180 days in Los Angeles County Jail. *Id.* ¶¶ 43, 44.

Petitioner was released from custody under an Order of Supervision. *Id.* ¶¶ 7, 54. Petitioner made efforts to comply with the removal process by applying for a passport at the Armenian Embassy, but the Embassy refused to issue the necessary travel documents. *Id.* ¶¶ 8, 51. Since his release from custody in 2013, Petitioner sustained a criminal conviction in 2014 under Cal. Health & Safety Code § 11378, and another conviction in 2022 for a misdemeanor under Cal. Veh. Code § 4462.5. *Id.* ¶ 54.

On December 9, 2025, Petitioner was detained by ICE during his ICE check-in, and he is currently detained at the Adelanto Detention Facility. *Id.* ¶¶ 9, 57, 58. Petitioner claims he was given no opportunity to respond to any allegations or reasons for detention prior to his custody change. *Id.* ¶ 57. However, the Government responded with a declaration and documentary evidence showing that a Notice of Revocation was served on Petitioner on December 9, 2025, and that an "Alien Informal Interview" was provided on the same day, during which Petitioner had the opportunity to respond to the reasons for the revocation of his order of supervision. Doc. # 8-1, ¶¶ 23-24; Doc. # 8-2.

## III. **LEGAL STANDARD**

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at

20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

## IV. DISCUSSION

Petitioner argues that he is entitled to be released from custody because the revocation of his release is governed by 8 C.F.R. § 241.13, which provides that he must be provided with notice of the reasons for revocation and an informal interview. Specifically, Petitioner asserts that (1) 8 C.F.R. § 241.13 ("section 241.13"), not 8 C.F.R. § 241.4 ("section 241.4") governs his detention, (2) subsequent convictions cannot legally authorize indefinite detention, (3) section 241.4 cannot be used as a default, and (4) he was denied mandatory revocation procedures under section 241.13(i).

In response, Respondents argue that the revocation of Petitioner's release was proper because Respondents were acting pursuant to their discretion and Respondents followed the proper procedures.

As an initial matter, Petitioner argues that the Court should strike and disregard Respondent's Opposition because it was filed on February 3, 2026, and the Court ordered that any opposition must be filed by February 2, 2026. *See* Doc. # 5. The Court finds that because Petitioner was able to submit a Reply brief, there is no prejudice. Although Petitioner argues that he was prejudiced by not being able to submit a sworn declaration due to the late filing, he did not submit such a declaration with the Petition or Application,

and the Court is not persuaded that the Opposition being filed one day late had a material impact on Respondent's ability to do so.[2]

### A. Likelihood of Success on the Merits

#### i. Sections 241.4 and 241.13

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a). Section 241.4, titled "Continued detention of inadmissible, criminal, and other aliens beyond the removal period," sets "out procedures DHS must follow to impose continued detention." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Section 241.13, titled "Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future," implements the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). See *Guzman Chavez*, 594 U.S. at 529. In *Zadvydas*, the Supreme Court held that a noncitizen may be detained only for a period "reasonably necessary" to bring about their removal from the United States—presumptively six months. 533 U.S. at 689, 701. After that point, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release them. *Id.* at 701.

---

[2] To the extent Respondent wishes to submit a sworn declaration, he can file a renewed application for a Temporary Restraining Order.

Petitioner contends that his release is governed by section 241.13, not section 241.4. Section 241.4 is the broader provision, and it governs the detention of noncitizens under a final order of removal unless the government has made the specific determination that there is no significant likelihood of removal in the reasonably foreseeable future, in which case section 241.13 governs. 8 C.F.R. § 241.13(b)(1) ("Relationship to § 241.4"). Here, the record supports Petitioner's claim that his re-detention is governed by section 241.13. Specifically, Respondents submitted a document titled "Notice of Revocation of Release" which was served on Petitioner on December 9, 2025, and states that Petitioner's re-detention was pursuant to 8 C.F.R. § 241.13. Doc. # 8-2; Doc. # 8-1, ¶ 23. Further, besides a general assertion that the government has broad authorization to revoke release pursuant to 8 CFR § 241.1 and section 241.4, Respondents make no argument as to why section 241.4 should apply.

        ii.    Procedural Requirements of Revocation of Release

Section 241.13(i) provides that release may be revoked if a noncitizen violates the conditions of their release or "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2).

Further, section 241.13(i)(3) provides that upon the revocation of release, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "which will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. §§ 241.4(l)(3); 241.13(i)(2) ("[I]f the alien is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the alien's continued detention pending removal.").

1    "In simpler terms, in order to revoke release, the government must notify the
2    noncitizen of the *reason* for the revocation and give them both an *informal and formal*
3    *interview*." *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4
4    (C.D. Cal. Aug. 28, 2025).

5    Here, although the Petition and Application assert that Petitioner was not given
notice or an informal interview, the evidence does not support this assertion. Specifically, neither the Petition nor Application contains a declaration from Petitioner, or any other evidence to support these assertions. And Respondents have provided a declaration from Lourdes Palacios, a Deportation Officer with DHS, ICE, Enforcement and Removal Operations, who states that Petitioner was served with a written Notice of Revocation on December 9, 2025, and that an Alien Informal Interview was provided on the same day. Doc. # 8-1, ¶¶ 23, 24. The declaration attaches the Notice of Revocation of Release, which states that Petitioner is being re-detained because: "ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you . . . you are subject to an administrative final order of removal. On August 23, 2017, you were convicted of possession of controlled substance paraphernalia (11364 HS). Doc. # 8-2. Based on these facts, it is expected that you will be removed to Armenia in the foreseeable future." The declaration also attaches a signed document titled "Alien Informal Interview," which asserts that an interviewing officer did in fact conduct an initial informal interview of Petitioner on December 9, 2025. *Id.*

Petitioner argues that the Court should disregard the evidence submitted by Respondents because it does not prove that there was any "meaningful" process, and because it is internally inconsistent by providing citations to different code sections for Petitioner's conviction. However, given the lack of competing evidence from Petitioner, the Court must accept Respondents evidence as true. Therefore, the Court finds that the evidence is sufficient to show that Petitioner is not likely to succeed on his claim that Respondents failed to follow their regulations by providing notice and an informal interview.

         iii.      Grounds for Revocation of Release

Petitioner next argues that he cannot be detained based on his past convictions, and that his release may only be revoked if there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." Section 241.13(i)(2); *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001).

The Court notes that Section 241.13(i) actually provides that release can be revoked for two reasons: either when a noncitizen violates a condition of their Order of Supervision (section 241.13(i)(1)), or when "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future" (section 241.13(i)(2)).

Here, Petitioner's Notice of Revocation of Release states that based on Petitioner's notice of removal and his 2017 conviction, "it is expected that [he] will be removed to Armenia in the foreseeable future." Doc. # 8-2. Petitioner argues that he cannot be deported to the USSR, but the Notice of Revocation of Release explicitly states that he will be removed to Armenia, not the USSR. Additionally, Respondents provided documents showing their efforts to obtain travel documents from Russia and Armenia. Doc. # 8-3; Doc. # 8-4.

Further, pursuant to *Zadvydas*, a six-month period of detention is "presumptively reasonable," and Petitioner has not been detained for over six months since his notice of removal was issued. *Zadvydas*, 533 U.S. at 701; *see also* Pet. ¶¶ 6–7; 9–10 (stating that Petitioner was detained from February 19, 2013 until May 19, 2013 (3 months), and again from December 9, 2025 until present (2 months)). Therefore, the burden would be on Petitioner to show that the total time in custody is not reasonable, despite the Supreme Court's determination that a six-month period is presumptively reasonable. Petitioner has not made that showing.

Overall, Petitioner has not shown how his re-detention violated the INA regulations or *Zadvydas*.

Because the Court has found that Petitioner is not likely to succeed on the merits of his claims, it declines to consider the other *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three Winter elements." (cleaned up)).

## V. CONCLUSION

For the foregoing reasons, the court DENIES without prejudice Petitioner's Ex Parte Application for Temporary Restraining Order and Order to Show Cause.

**IT IS SO ORDERED**.

Dated: 2/10/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE